SAMUEL PARKER v. STATE OF NEBRASKA.

FILED JUNE 8, 1906.   No. 14,592.

Instructions to the jury must be based upon and applicable to the evidence; and where in the trial of a criminal case an instruction is given without testimony to sustain it, and prejudice results thereby, a new trial will be granted.

ERROR to the district court for Thurston county: GUY
T. GRAVES, JUDGE. *Reversed.*

*W. S. Summers* and *Thomas L. Sloan,* for plaintiff in
error.

*Norris Brown, Attorney General,* and *W. T. Thompson,*
contra.

BARNES, J.

Samuel Parker was tried in the district court for Thurs-
ton county on an information charging him with murder
in the first degree for the killing of one Andrew Johnson.
He was found guilty of the crime of manslaughter, and
sentenced to the state penitentiary for a term of five
years. From that judgment and sentence he prosecutes
error, and will be hereafter called the accused.

His first contention is that the trial court erred in over-
ruling his motion to quash the jury panel. The grounds
of such motion were: First, that a large number of the
citizens, taxpayers and residents of Thurston county are
Indians, and were objected to and excluded from the jury
list from which the panel was drawn for that reason alone;
that, he being an Indian, such action amounted to a denial
of his rights under the laws and the constitution of this
state and of the United States. Second, that one of the
officers who participated in selecting the jury was a non-
resident of Thurston county, and disqualified from acting
in that capacity. It appears that his motion was sup-
ported by affidavit evidence, and an examination of the
record discloses that such affidavits are not embraced in
or made a part of the bill of exceptions, and whatever
showing there was in support of the motion is contained in
the transcript. The evidence not having been preserved
in the manner provided by law, and according to our well-
established rules of practice, it cannot be considered by
this court, and therefore we are unable to determine this
question. *Wright v. State,* 45 Neb. 44.

It is also contended that the court erred in receiving the evidence of the witness Maggie Martin, for the reason that she was wholly unacquainted with the nature and sanctity of an oath. Her preliminary examination leaves her competency doubtful, to say the least, but we are not required to determine this question for reasons which will hereafter appear.

It is further claimed that the court erred in instructing the jury, on his own motion, as follows: "9. You are instructed that a party charged in the unlawful killing of a human being cannot avail himself of the claim of necessary self-defense, or defense of family, if the necessity for such defense was brought on by his own deliberate, wrongful act. Therefore, if the jury believe from the evidence that the defendant sought, brought on, or voluntarily entered into a difficulty with the deceased, Andrew Johnson, for the purpose of wreaking vengeance upon him, or to accomplish some unlawful purpose, or if the jury should find and believe from the evidence, beyond a reasonable doubt, that he killed the deceased at a time when he had, because of the acts of the deceased or those with the deceased, no reasonable apprehension of immediate and impending injury to himself or family, and did so to accomplish some unlawful purpose, or did it from a spirit of retaliation and revenge, then the defendant cannot avail himself of the law of self-defense." The jury were further told in substance, by instruction No. 10: "If from all of the evidence they should find, beyond a reasonable doubt, that the defendant had no reason to believe that the deceased, Andrew Johnson, intended to take the life of his father or inflict upon him great bodily harm, and that the defendant struck the fatal blow in revenge, or in a reckless spirit, the defendant was not entitled to claim exemption from punishment on the ground of self-defense, or defense of his father."

Many of the witnesses in this case were Indians, and their evidence was delivered through an interpreter. Some of it is hardly intelligible; but it fairly establishes the

following: The deceased, together with his wife and his two daughters, was visiting the father of the accused at his place of residence during the afternoon of the day when the difficulty, which probably caused his death, occurred. The accused was absent from home during all that day until a short time before the affray in question took place. The father of the accused had two or three bottles of whiskey, and, when the deceased and his family arrived at his place, produced them. They all drank copiously of the liquor, and were more or less intoxicated when the accused came upon the scene. It is fairly inferable from the evidence that the two families had been friends for many years, and no difficulty of any kind had occurred between them until after the accused returned. About that time the deceased and his family prepared to leave for their home, but he was so intoxicated that he was hardly able to go from the house to the wagon, so the accused assisted him to where the team stood, and tried to lift him into the wagon. The deceased in attempting to climb into the vehicle fell to the ground, and one of its wheels ran over him. This apparently caused him to become angry, and he laid hold of the accused and commenced to bite him. In order to make him desist, the accused choked the deceased, and thereupon the wife laid hold of the accused, pulled his hair, choked him, and tore his shirt off. He thereupon turned his attention to the woman. The deceased, having by this time become partially sober and able to help himself, obtained the possession of a neck-yoke, and commenced an assault upon the father of the accused, chasing him, as the evidence shows, at least two or three times around a cultivator, which stood there, finally overtaking him; and the son, seeing the danger the father was in, came to his assistance. He succeeded in wresting the neck-yoke from the deceased, and struck him with it. Johnson thereupon fell to the ground, was afterwards taken home, and was found to be quite badly injured. He died some nine days afterwards, either from the effects of the blow or from blood poisoning caused by

his wounds. We find no testimony in the record which shows, or tends to show, that the accused brought on the difficulty, that he was actuated by any hatred of the deceased, or that he cherished any spirit of ill will or revenge toward him. On the contrary, the evidence seems to show that the parties were friends until the very moment when the affray commenced. So, the real question for the jury was whether the accused used more force than was necessary, or than would have appeared to be necessary under the circumstances to a careful, prudent and considerate man, in the defense of his father. This being true, the giving of the instruction above quoted was reversible error. The tendency of the instruction was to lead the jury to believe that there was some evidence from which the element of hatred, revenge or ill will could be attributed to the accused, and thus deprive him, as stated by the court, of the right of self-defense, or defense of his father. The instruction complained of is in almost the identical language which we disapproved in the case of *Blair v. State*, 72 Neb. 368, where it was said:

"It is a well-settled rule that the instructions must be based on the evidence, and where an instruction has been given without any testimony to support it, and prejudice results thereby, it is reversible error."

The record contains many other assignments of error, but as the judgment must be reversed for those which we have heretofore discussed, they will not be considered, and it may be presumed that upon a retrial of the case they will be avoided by the trial court.

For the foregoing reasons the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.